Mr. Eisenberg. Your Honors, and if so please the Court. We're here again, Mrs. Nancy Melendez-Camilo, again through this appeals process, a records corrections process, if you will, because again of mistakes made by the military. In the situation here, the Board and the trial court below have acted arbitrarily and capriciously in enacting their decisions and ruling that, based on the administrative record, that the prior military decisions were correct in denying her promotion to lieutenant colonel. It was arbitrary and capricious for two reasons. One, it failed to consider the seven-year gap appropriately, which was an important factor in its decision-making, as it hurt my client when she was up for promotion. A seven-year gap in her record that was not caused by her, but caused by the military. Granted, as the BCMR noted, that there are many non-traditional paths that many military members take. However, this was not by my client's choosing. This was not something she voluntarily did. She was passed over for promotion incorrectly, improperly, by the military, and the military was trying to create a path for her to make sure she had a fair shake as she moved through the appellate process. I'm sorry, moved through the military process for promotion. Excuse me, but maybe you can help me a little bit with the chronology, because I know there's some discussion in your brief about the alleged taint to the OPR because the OPR was signed by a commanding officer who had been the subject of a whistleblowing complaint. Yes, sir, by my client. So, but I can't tell, and we're talking about, is it, we're talking about Lieutenant Colonel Ramos? I believe so. Now, he signed, along with others, two different OPRs, one in 99, one in 98. Yes, sir. Is that right? Yes, sir. Now, he signed along with others, and neither of those, was there any language about definitely promote? Yes, sir. There were also OPRs before that. Yes, sir. In 97, 96, signed by other officers, and there was 90, 2000, 2001. Again, the language definitely promote or needs to promote, doesn't appear. And I'm trying to piece this all in with the question, when was the whistleblowing brought out? If my memory serves correctly, it was during and before the first set of the two OPRs. And although those OPRs were... Can you give me a date? I mean, the OPRs cover a year. Yes, sir. And even though... Yes, sir. So, I'm just trying to get a handle on exactly when the whistle was blown, and then secondarily to that, exactly when Lieutenant Colonel Ramos might have been washed out. And I apologize, I don't have the exact pinpoint dates, but I can tell you that her whistleblowing activities occurred before the OPRs were issued by Lieutenant Colonel Ramos. So, before the two, in other words, before the one in May 98 and May 99. Before 98. Before 98. Yes, sir. But yet, he was still there in 99. I believe so, sir. Because he signed the second OPR in 99. Yes, sir. So, I apologize, perhaps you're getting to a point that I'm... Well, I'm just trying to piece this all together. No, I understand. I understand the point you're trying to make, but in order for me to get a sense of the significance of the whistleblowing to the failure to indicate definitely promote, I need to know a little bit more about the chronology. Understood. The Corrections Board was made aware of the fact that Lieutenant Colonel Ramos had been relieved of his duties, but before his removal, they had written the OPR with both their client and the Air Force, informed the Board of that. Yes, sir. And the Board reflected that fact in their description of the Air Force evaluation in their report. And if I recall correctly, it wasn't in great detail. Well, it was, as I see the only words in the actual Board opinion, it says, as a consequence of the investigation, this is after she blown the whistle, if you will, the second time. Yes, sir. Right? Said the Detachment Commander was relieved of his duty, but prior to his removal, he wrote her second OPR. So, the Board, the Corrections Board was aware of the fact that they had in front of them an officer, efficiency reports had been written by Ramos. And if I may, sir, one, clearly, it was written after the whistle blowing actions occurred, and two, it missed or did not contain the necessary language that needs to promote language. Right. But as Lynn pointed out, that needs to promote language wasn't in the other reports, nor the two light generals or three light generals who were supporting your client's request for extraordinary relief. The Brother Board also said they couldn't utter those magic words. I believe that John said we could not, we think very highly of Major, but we couldn't say promote now would be unfair to others who had gaps in their service. And I apologize, I don't recall that specific language from the three letters. And I'm certainly not arguing with you, sir. But they did say also that for a seven year gap did harm. You know who I'm talking about? Yes, sir, I do. And there were two of them at least. There were three, three star generals, all who wrote supporting letters on behalf of my client when she first went to the Board. But in those letters, didn't they say they unfortunately felt they could not say the And I'm looking through my record as we speak. Actually, I have them right in front of me from Lieutenant General Donald. Yes, sir. I have J27, 28, and 29. Yes, sir. I could not give Major Camillo a definite promote recommendation. It would have been unfair to the officers in her group. Because it would be unfair. He says I could not give Major a definite promote. I want you to, you know, I'm supporting the relief that she's asking for. Yes, sir. Because she's obviously a very stellar officer and has a fine, very, very fine record, including even from Mr. Ramos, a glowing OER, but without the magic words. Yes, sir, if I may. To do so would have been unfair to other officers in her year group who are under my command who have strong records. But if I'm reading the sentence correctly from the first part, it says that it was because of her seven-year gap or near seven-year gap in service that ultimately did not allow her to grade the record. And it was that seven-year gap that they're saying, well, you know, everyone has their issues when, you know, being promoted through the military service. But the seven-year gap is what you were really focusing on, I believe, in front of the Corrections Board and what you were substantially, you know, leaning on in the court below. Yes. And as I understand your argument in this court, you were arguing only one leg of all that, which is that there had been an insufficient appreciation of the fact that Colonel Ramos had been forced to, I mean, he was disciplined because of a wrongdoing that your client had brought to the attention. And I believe both arguments are important. I believe both arguments were ultimately preserved as we appeal the whole record. And a side note, if I may, I think with the Supreme Court's ruling recently in Henderson v. Shinseki that we do give the veterans and the military personnel some greater deference when it comes to these types of issues. Granted, this is not a VA case, and granted this is not a Social Security appeals case. This is a military records correction case where, if you look at the language of 10 U.S.C. 1551, it seems that this is more of a... Can I ask a question? Yes, sir. The seven-year gap occurred, as I understand it, as a result of your client having blown the whistle before the seven-year gap happened. And as a result of blowing that whistle, she got actually a negative OER. And I need to double-check. It was my understanding that the blowing of the whistle occurred after the seven-year gap. I'm going back to the very beginning. Yes, sir. The gap occurred because she was passed over and had to leave. Improperly. Right. And she was passed over improperly because in one of the OERs there had been a negative report that had been written by someone against whom she had blown the whistle. Way back when. Way back when. It was my understanding that there was an issue with the records that had nothing to do with my client. I'll have the whistle blown. There was an OER that was removed from her record at her request. Now, that OER was critical of her. I thought it was undisputed that the seven-year gap resulted because of having been passed over for a promotion at that time, and the reason for the pass over was the whistle blowing. Yes, that's right. After what you got from the record? Yes. I apologize. She originally, I mean, I'm trying to get at it. Yes, sir. She successfully got reinstated after a seven-year gap because she was able to prove that she had been badly wrong in assessment of her talents because there was a flawed OER, a poisonous OER written by somebody who had a reason to be poisonous, and they took that OER out of her record, and she was allowed to write her own OER and plug it in. Yes, sir. Okay. What I'm saying is to the extent that your client is now complaining or now arguing that she was treated unfairly because Ramos was prejudiced against her. Yes, sir. Is it too late for her to go back to the corrections board and say, hey, just like before, when you threw me out, there was poison in the well, and I'm entitled to prove the poison, and if I'm right, you can reinstate me and give me another period of time if I wish to try to prove that I'm entitled to promotion. And that's what we did. No, no, no. Could she still do that? She went and asked for immediate promotion in front of the board. That was the correction she asked for, not reinstate me. She didn't ask to go back into active service for two more years. What I'm trying to find out is if there's relief for your client here in the form of going back and saying, just like before, when the well was poisoned, it was poisoned after I came back for two years because Ramos poisoned the well. Yes. And I'm entitled to an unpoisoned period for testing, so please put me back in the military as major and give me a couple more years to run for lieutenant colonel.  That's certainly an option. I thought she was seeking immediate promotion. As lieutenant colonel. That's how I read that closing sentence of General Lamontagne where he says that we can't provide the relief that's requested, only you, the board, can. I assumed that was the immediate promotion. Was that correct? Yes, because basically she was improperly passed over, as we've argued, and she should have been promoted to lieutenant colonel at that time. And, of course, we could go back again and ask for that relief, or a different relief because, excuse me, we asked for that relief. That's what I was just trying to establish, that if immediate promotion is not in the card, then it would seem to me as if she at least has an avenue to go back and say, this is just a replay of what happened to me all those years ago. Yes, but then again, don't we, I mean, it's been several years, again, that she's been. Well, maybe. The immediate relief issue, you have to, you need to convince us that the board was arbitrary and capricious when it denied her a request for immediate promotion. And, again, I think that based on the letters, although the letters said that they couldn't because of her gap, it was that gap that caused her not to be promoted. Well, and the board said that too. The board decision said that she has this gap, unfortunately. Right, but they didn't seem to pay great weight to, or any weight to the letters from the generals. And, quite frankly, they made the, it was an illusion to me that she made this choice willingly to be out of the military for seven years, which she didn't. Let's hear from the other side. Is that, have you, we can ask Mr. Eisenberg a few more questions. Sure, I'm sorry. We'll save you a little time for rebuttal, Mr. Eisenberg. Were there any more questions, ma'am? Well, we're exhausting the schedule, but we'll save some time after we hear from the government. Thank you, ma'am. Ms. Toplin, what does one do when, because of the seven-year gap, undoubtedly this person was prejudiced, having been out of the loop for seven years. It doesn't look as if there was any compensation for that disadvantage. Well, what's the government's position? There was compensation for that disadvantage, Your Honor. After Major Melendez-Camillo was reinstated in 1995, after her initial seven-year gap, the OPR specifically corrected her records by removing that first change of OPR from the 1980s, putting in a new OPR. Correcting the record. You can't turn the clock back. They cannot turn the clock back. They then said that she needed to be given two current OPRs as a major prior to be considered for her first selection board. So they gave her two full OPRs to accumulate a record of performance, and they did what the other thing that was required was correcting for that gap by indicating that that time frame when she was out of the service did not have OPRs was no fault of her own. That is all that is required when they bring them back in. So they actually accounted for it and gave her that time frame after she was brought back in as a major to accumulate. But it seems to me that that resolution almost assured an unsatisfactory circumstance when it came time for promotion because there would be this gap where she would not have the same performance record as the person she's competing with. There would be at that time frame, but the board accounted for that time frame by putting the correction in her records that it was not of her own doing, that it was not of her own doing, and they actually corrected and showed that that gap was not her fault. And then they went and gave her time to accumulate that record of performance. The board then analyzed that and determined that the process to be promoted to lieutenant colonel is incredibly competitive. It's based on the whole person concept. It's based on all records before them, and Major Melendez-Camille, with all due respect to her time away from the military because of that unfortunate situation that she was placed in in the first instance before she was brought back, was given a chance to grow. The board, when they brought her back in as major in 1995, gave careful consideration to ensure that she would be given a fair chance to be promoted to lieutenant colonel before they brought her back, and specifically why they took that time to make a reasoned decision, correct all her records, and give her OPRs and give her a solid chance to be promoted. As the board said in its most recent decision in 2002 when she now challenges her promotion to lieutenant colonel, they said that promotion to lieutenant colonel is incredibly competitive. It's based on the whole person concept. There are other officers that have different career paths. There are other officers who have gaps in service. There are inter-service transfers. There are people who go to and from the reserves. But they found that she was given an adequate opportunity to be promoted. When she was reinstated after the gap, were the terms of this reinstatement terms that she agreed to? Did she have a right to negotiate those terms, or were they just simply terms presented to her? Well, they were part of the BCMR decision, Your Honor, and had she been unsatisfied with that BCMR decision, she certainly could have, I would have presumed, moved for reconsideration of the time or made some form of challenge saying it wasn't sufficient, but she chose not to do so. She reentered, went through her service, and, I mean, the time period for that, if she had felt that that remedy, that relief in 1995 was not sufficient, then the time to challenge that was certainly before now, now that she's dissatisfied with the ultimate result of not being promoted and dissatisfied with the ultimate result of the board. What she's trying to do now is to bootstrap back in a different challenge, which is something that the board adequately considered and reached a reason to. The board says in its opinion that it reviewed the record in its entirety, and they reached the conclusion, I'm now reading from JA 9, they're saying promotion to the degree of lieutenant colonel is very competitive, this is two-thirds of the way down on page JA 9, and they say here, the applicant has not provided persuasive evidence that she would have been selected for promotion had it not been for the interruption in her career. Right? Yes, Your Honor. So is that decision impenetrable? Well, that decision is... They say we are reaching the decision, we have decided that she has not provided persuasive evidence that she would have been selected for promotion had it not been for interruption in her career. Yes, Your Honor. That's the board's decision. That decision is not impenetrable, but it's under an arbitrary and capricious standard of review. That decision, this court can only overturn that decision if it found it to be arbitrary and capricious, unsupported by substantial evidence, or contrary to law. In this case, the board considered all of her submissions. They considered the fact that she had this gap in service. They considered the fact that they took, as the board said, that they took efforts... The various letters from the general who we talked about earlier were part of that record, correct? Yes, they were, Your Honor, as well as all of the statements and all... As well as all the submissions, because I believe that Major Camillo had made some impressive submissions detailing why she felt that the gap in service had been prejudicial. Right. Yes, Your Honor. She made those submissions before she initially went to the board. Those submissions were considered first by the Air Force Personnel Center in their advisory opinion. Then she had a chance to respond to the Air Force Personnel Center in that advisory opinion before the board. And then that submission, as well as her response, the Air Force Personnel Center was considered again prior to the time the board reached this decision. And they said they explicitly considered all of her submissions and found that she failed to demonstrate evidence, existence of error or injustice. And they found that she had not produced the evidence to show that she would not have been selected had it not been for the interruption in her career. Well, that really takes us to the problem. Put yourself in the position of the guardian of the national interest. Here, an officer is, shall I say, brave enough, willing to blow the whistle about infractions so serious that the persons in charge are removed. And along comes the seven-year gap because of essentially retaliation for the whistleblowing. So after seven years, finally, through the fullness of bureaucratic procedures, she's restored. And now seven years older, doesn't have the continuity, perhaps the record of achievement, of interaction, of familiarity because of the seven-year gap. So here we have someone who, if you just look at it, is disadvantaged. Maybe the same thing might have happened. Maybe the promotion wouldn't have taken place. It doesn't look as if it wouldn't have. It looks as if it would have. But maybe it wouldn't have. So the next time someone in the military observes a serious infraction taking place on the base, they hold their tongue. They keep their peace. They don't blow the whistle. They proceed through their career, whatever promotions are earned, and that's the end of it. That's not how whistleblowing statutes are supposed to work. And so if you look at how it's supposed to work, maybe it shouldn't have been reviewed the way the board reviewed. That is objectively weighing Major Melendez against the other candidates of whom she was now seven years older and all the rest of it. Maybe there should be a different standard, not the same standard, for someone who is shown to have been a whistleblower and is finally rehabilitated. But what you tell us is that objectively, looking at everything, at the situation when she received those two reviews after her return, a fair evaluation was made and she wasn't selected. And it's very hard for me to see how we three sitting here can penetrate that. Maybe that's not the right standard in the national interest. What do you think? What we think, the position of the government, is that what the actual standard is for the selection and the promotion of officers is well within the province of the military. We have to defer to the military in that respect. It's their province. They're the ones that are competent to rank and promote officers and truly determine who has the most stellar record of performance and who is worthy of promotion. That's not something that the courts, nor I, nor the government, nor anybody is competent to do. That's the position of the military. That's a matter of military deference to promote and rank officers. In this case, the military, when they brought her back in in 1995, gave reasoned consideration and did what they believed was fair to allow her to accumulate a record of performance. And it's unfortunate that it... Well, the military pushed her out. It was the civilian board that reinstated her. And the civilian board in 1995, when they brought her back in, Your Honor, corrected her records, removed the originally defective OER. It's the civilian board this time that is now resisting the recommendations of at least two generals, right, and a full colonel? Yes, Your Honor. It's the civilian board that is rejecting those recommendations. It's the civilian board that looked at the entirety of Major Melendez-Camillo's submissions and determined that she had not produced sufficient evidence to show error and justice. They reviewed every single one of her submissions. They reviewed the fact that the board took painstaking efforts in 1995 to correct her records and do what they believed was fair to allow her a fair chance to be promoted. But maybe perhaps instead of saying what is fair is to simply not give credit for the service because there was a gap, perhaps what is fair under these circumstances is to say that because her absence was not at all due to her making, it was something beyond her control simply because she blew the whistle and that she should be given credit for that time in the sense of having whatever performance reports existed reflect what performance she would have provided during those missing years. In other words, she's competing against officers that had a full track record of performance and rather than saying, well, she only had two years versus others that had seven years, perhaps what they should have done is to say that those two years are reflective of the performance she would have provided during those missing years and evaluate her on that basis because it seems that otherwise she's dead on arrival because she's competing with people that have many more years of performance. Your Honor, the military, quite frankly, did not think so and that's well within their discretion. A similar situation arose in Yee where there was a similar period of gaps and there was a long time, that five-year service break, and in that chance they found that the board was arbitrarily capricious because he did not have a fair chance to compete and they specifically said that what is required is to allow them to bring them back in, account for the seven-year gap, which they did specifically in this case indicating that no reports were available based on no fault of her own because they cannot go back and create hypothetical performance reports without the time actually happening, and then to give her a chance to compete on new records, and in this case they found that giving her these two records were sufficient to build a competitive record of performance to compete for a promotion to lieutenant colonel. That's a military personnel decision as to the fact of whether two records were sufficient, but in 95 they certainly thought it was and she certainly thought it was by not challenging it at the time or not addressing it in any way until now, years later, she seems to be unhappy with the end result. Ultimately, she is merely trying to bootstrap in a challenge to the ultimate result is the fact that she wasn't promoted, and as they said, promotion to lieutenant colonel is incredibly competitive. They gave her every opportunity or what they believed to be a fair and equitable opportunity to be promoted, and she was not. The board reviewed her entire submission, her entire records, with all due deference to these generals' opinions as well as every argument they presented, and they found that ultimately she didn't come forward with the clear and convincing evidence of injustice, and they found that it was her non-selection. There was no error, and ultimately she then brought her argument once again to the Court of Federal Claims who once again reviewed the whole record and found that she failed to bring forward evidence showing that the board's decision was arbitrarily capricious. Were there people in the officer ranks that ended up with gaps  or standing outside of Ackie viewing and coming back in? Would there be people also who would have gaps in their record where the gap wouldn't, quote, have been the fault of the governor? Yes, there are other people that have that, and that's alluded to in the board's opinion is that she's not the only person who would have. I'm just trying to get at here truly the problem of the gap wasn't of her making, really, because there was a poisonous OER that the system corrected. Yes. Okay. What I'm trying to get at is whether or not it isn't inherent in the promotional system that you can have people who have gaps in service where there'll be a note. It'll be clear that it's not their fault because they've served for a period of time saying Iraq, they come back, they go in reserve status, and then they get called back or they ask to be called back up again. That would be a military personnel decision, ultimately, as to what they had to account for. In this case, they didn't. The point would be that you could have a person who were not as a result of the fault of the government. There's a military, there's a four- or five-year gap in their record, and they would also have to compete against people that didn't have gaps. It's my understanding that the board accounts for those gaps by saying that they have no gaps with the fault of their own. However, I would have to get back to you on the actual input on the end as to whether or not those situations do exist, Your Honor. But it's my understanding that in cases of this when somebody is removed and in other cases where there are issues that lead to gaps, the standard process is to say that there are no reports available due to no fault of their own. And we would submit, Your Honors, that unless this court has any further questions, that the decision of the board is not arbitrary. Major Melendez-Camillo has introduced no evidence showing that the decision of the board is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. And therefore, this court should affirm the trial court's decision. Okay. Thank you, Ms. Chaffin. Thank you, Your Honor. Mr. Eisenberg, you have three minutes. Thank you, Your Honor. Your Honors, I would like to go back to Judge Kloffinger's discussion of the three records, letters from the three star generals. If we look carefully at the third paragraph from Lieutenant General Woodward, the third paragraph from Lieutenant General Lamontage, it basically says that she did not have— It's basically Lord, Ramon Cain, and someone named Woodward, right? I'm sorry. I meant— I apologize. Let me start that over again. I think it's Donald Lamontagne, Lance Lord, and John Woodward. For the generals. Yes, sir. I'm sorry. Let me start over again briefly. Lieutenant General Lord and Lieutenant General Woodward in particular. Paragraph three for Lieutenant General Lord and paragraph two for Lieutenant General Woodward. If we look at the sentences carefully, it basically says that because of her seven-year gap in her service, she was not able to develop a record like her colleagues were able to, which denied her a fair chance to be competitive. All the three generals all said the same thing. So I don't think there's any doubt that this is the crux of the issue, that it was those seven years. They all said that the break-in service prevented her from developing a record that was competitive with those that she was competing with. And I apologize if I misunderstood Judge Klovenger's earlier discussion. But I think then it can't leave without a doubt that given this very large weighing issue, that the board clearly did not give it the proper due credit that it deserved, that Ms. Camillo deserved when it was reviewing this application. Well, they all said that the people against whom she competed had stronger records, but they didn't say that they thought that her record would have been stronger than the others, but for the gap. True, but that question wasn't necessarily asked, and the issue was not whether... But that's the point. But is it that point? Because aren't we saying then, isn't the issue whether or not she had an opportunity to fairly compete, which was what the purpose of the first board was all about, that she had the opportunity to fairly compete? That's what the first board was supposed to do, give her an opportunity to fairly compete, which clearly she didn't. Well, but that goes in a way, doesn't it, whether the terms and conditions of the reentry were objected to or she felt that two years wasn't adequate. As a matter of fact, I think there were four years before she finally was out, right, because she greeted promotion boards as late as May 01. But, Your Honor, with all due respect, Ms. I mean, aren't I right? It was that time. So I just want to get it clear in my mind. No, no, no, and I'm certainly not arguing that... And I'm not arguing over the gaps of times from her applications and why she didn't bother to, quote-unquote, file for an appeal from the first board. However, given the turmoil she's been through to get where she's gotten every step, I don't blame my client for being exhausted. No, I don't either. What I wonder is whether or not there wasn't a little bit of slack being cut here because she greets three promotion boards, right, and the last one is May of 01. Okay, so that was a freebie, wasn't it? Freebie? Well, no, at what stage in the game could, if she meets a promotion board in May of 99 and has passed over? Yes, sir. And if she meets a promotion board in 00 and has passed over, can't she be removed at that stage in the game, two passovers? Well, she's entitled to two free passovers from the first board correction. However, one year doesn't give her enough time to make up for seven. Neither does two years give her enough time to make up for seven. I'm just trying to get at how many she greeted. She had the two-year period before she had to greet her first promotion board, right? No, her first two OERs, I believe, was her first year back. I'm talking about when she came back in service. Yes, sir. The first time that she met a promotion board was when? I believe 97, 98. I thought it was 99. I thought that was the second board. Forgive me if my time runs. Okay, well, we're out of time. Is there something we need clarification on? I apologize, Your Honor. I didn't hear you. I just was looking. She greeted a CY99A and an A99B, and then she greeted an OOA, right? I stand corrected. That's four more. Four promotion boards. Two years. A total of two years. But it was more than two years after she got back into service. True, but not a total of seven. You're talking about how much time did she get to prove herself before they finally say you're going to go. You had a chance to get promoted, and you're out. I understand, Your Honor. It was substantially more than two years. But not the seven. Well, it wasn't a full seven, but it wasn't two the way you had the impression when they first came back. If we need to know, we'll figure it out, or we'll ask you. Thank you, Your Honor. Okay, so thank you, Mr. Eisenberg. Thank you, Ms. Toplin.